WASHINGTON STATE DEPARTMENT
OF GAME, Petitioner,

v.

INTERSTATE COMMERCE
COMMISSION,
Respondent.

No. 86-7346.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1987.

Decided Oct. 6, 1987.

Kenneth O. Eikenberry, Atty. Gen., Daniel William Wycoff, and David M. Horn, Asst. Attys. Gen., Olympia, Washington, for petitioner.

Charles F. Rule, Acting Asst. Atty. Gen., Catherine G. O'Sullivan and Donald S. Clark, Dept. of Justice, Robert S. Burk, General Counsel, Ellen D. Hanson, Associate General Counsel, Evelyn G. Kitay, I.C.C., Washington, D.C., for respondent.

John B. Norton, Washington, D.C., for intervenor Association of American Railroads.

Before POOLE, FERGUSON and CANBY, Circuit Judges.

POOLE, Circuit Judge:

This is a petition brought by the Washington State Department of Game for review of a final order and ruling of the Interstate Commerce Commission interpreting section 8(d) of the National Trails

System Act, as amended, 16 U.S.C.A. § 1247(d) (1987), as conditioning so-called rail-to-trail conversions on the negotiation of voluntary agreements between abandoning railroads and prospective interim trail users. We have jurisdiction pursuant to 28 U.S.C. §§ 2321(a) and 2342(5) and we deny the petition.

## FACTS AND PROCEEDINGS

In 1983 Congress amended section 8 of the National Trails System Act of 1968 (Trails Act) by adding a provision for the interim use of railroad rights-of-way as recreational trails.[1] National Trails System Act Amendments of 1983, Pub.L. No. 98–11, § 208 (1983); 16 U.S.C.A. § 1247(d) (1987) ("§ 1247(d)"). Thereafter, the Burlington Northern Railroad ("Burlington") applied to the Interstate Commerce Commission ("Commission") to abandon 5.57 miles of right-of-way near Rosalia, Washington. Upon learning of Burlington's intentions, the Washington State Department of Game ("Washington") requested that the Commission transfer the right-of-way to the state for interim use as a public hiking trail. Washington contended that under § 1247(d) once a state agency agrees to accept full responsibility for a right-of-way, the commission *must* order interim trail use, in lieu of abandonment.

Washington's construction of § 1247(d) was consistent with the Commission's *pro-posed* regulations. *See* 50 Fed.Reg. 7200 (February 21, 1985). After allowing for comments, however, the Commission reversed itself, taking the position that it should order interim trail use if and only if the railroad and prospective trail user first negotiated an interim trail use agreement. After Washington and Burlington failed to reach a voluntary agreement, the Commission, applying its new construction of § 1247(d), granted Burlington's application for abandonment and denied Washington's request for interim trail use. *Burlington Northern Railroad Company-Abandonment Between Rosalia and Spring Valley, WA* (served April 17, 1986) (Dkt. No. AB–6, Sub-no. 258) ("Rosalia"). In its final rules governing implementation of the amendments to section 8 of the Trails Act, the Commission reiterated its view that § 1247(d) requires a voluntary agreement. Ex Parte No. 274 (Sub-No. 13), *Rail Abandonments-Use of Rights-of-Way as Trails* (served May 6, 1986), 51 Fed.Reg. 16851–53 (May 7, 1986) ("Trails Act Rules").

On June 11, 1986, Washington filed a timely petition for review of (1) the Rosalia decision and (2) the Trails Act Rules.[2]

## ISSUE

The issue before the court is whether, in the Rosalia decision and the Trails Act Rules, the Commission correctly construed § 1247(d), as requiring a voluntary agree-

---

1. Although 16 U.S.C. § 1247(d) was enacted as a single paragraph, it is useful to separate its three sentences:

 "1. The Secretary of Transportation, the Chairman of the Interstate Commerce Commission, and the Secretary of the Interior, in administering the Railroad Revitalization and Regulatory Reform Act of 1976, * * * shall encourage State and local agencies and private interests to establish appropriate trails using the provisions of such programs.

 2. Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for *railroad* purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

 3. If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Commission shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use."

2. A brief was also filed by intervenor, Association of American Railroads. As their position is substantially similar to the Commission's, we refer to both herein as "respondent."

ment between Burlington and Washington as a condition precedent to the issuance of an interim trail use order.

## STANDARD OF REVIEW

 Our review of the construction given by an agency to a statute it administers is limited and deferential. We inquire first whether Congress has addressed directly the issue before the court. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If it has, our inquiry is at an end, since both the court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. We are therefore compelled to overrule an agency's interpretation if it is "contrary to clear congressional intent." *Id.* at 843 n. 9, 104 S.Ct. at 2789 n. 9. If, however, the statute does not address the specific issue before the court, or does so ambiguously, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. Accordingly, the construction adopted need not be the only possible construction or the construction we would have embraced if we had examined the matter *de novo. Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. Indeed, it need only be "reasonable." *Id.* at 844, 104 S.Ct. at 2782–83. *See also Pathfinder Mines Corp. v. Hodel,* 811 F.2d 1288, 1290 (9th Cir.1987).

## DISCUSSION

As intimated above, Washington contends that whenever a railroad initiates an abandonment proceeding and a qualified entity agrees to assume all managerial, legal and financial responsibility for the right-of-way, the Commission *must* order the right-of-way transferred to the entity for interim trail use. The state bases its contention on the use in the third sentence of § 1247(d) of mandatory "shall" language and the absence of any references to voluntary agreements. It finds additional support for mandatory rail-to-trail transfer in the 1983 amendment's legislative history

and statutory purpose. Furthermore, it argues that the Commission's interpretation renders § 1247(d) "purely repetitive of pre-existing law" and otherwise irrational.

Respondent counters that although the third sentence of § 1247(d) standing alone might be read to require transfers for trail use, other language in the statute demonstrates that any interim trail use arrangements must be voluntary. It further contends that the Commission's reading of § 1247(d) is consistent with the rest of the Trails Act and its legislative history. Finally, respondent argues that the Commission's interpretation must be correct because § 1247(d) does not confer condemnation power and the authority to pay "just compensation."

### A. Congressional Intent?

#### 1. Statutory Language

In considering whether Congress has directly spoken to the issue before the court, we begin with the language of the amendment itself. An examination of § 1247(d) reveals that sentence three is not as clear and direct as Washington would have the court believe. While the use of the word "shall" (twice) makes some action on the Commission's part obligatory, it is not certain, on the face of the statute, what the Commission is required to do. Washington construes the sentence as requiring the Commission to order interim trail use whenever a qualified entity steps forward. This reading is plausible. Also conceivable, however, is respondent's position that the "transfer or conveyance" referred to in sentence three must be pursuant to some voluntary arrangement between a railroad and potential interim trail user.

Examination of the rest of § 1247(d) does not resolve the issue. Washington is correct in pointing out that nothing in sentences one or two explicitly precludes its preferred interpretation of sentence three. On the other hand, these sentences do not support the state's view either. Sentence one directs the Commission to "encourage" states, local agencies and private interests to establish trails using the provisions of programs contained in the Railroad Revital-

ization and Regulatory Reform Act. Pub.L. 94–210, 90 Stat. 31 (1976). Washington does not demonstrate that any of these provisions empower the Commission to mandate right-of-way transfers to interim trail users. Sentence two provides that interim trail use does not constitute a formal abandonment of the right-of-way for railroad purposes. The sentence contemplates interim use arising through "donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter." Respondent asserts that these are all voluntary transactions. Washington also points out that "transfer" and "other" do not exclude mandatory transfers. They do not require mandatory transfers for interim trail use either. We therefore conclude that the language of the statute is ambiguous with respect to the issue before the court.[3]

## 2. Legislative History

Both parties find support for their respective positions in the House Report accompanying the 1983 amendments to the Trails Act.[4] The passage cited by Washington states that *if* interim trail use is feasible and a qualified public or private organization steps forward and agrees to assume full responsibility, "*then* the route will not be ordered abandoned." H.Rep. No. 98–28, 98th Cong., 1st Sess. 8–9, *reprinted in* 1983 U.S.Code Cong. & Ad. News 112, 119–20 (1983) (emphasis added). This statement provides some support for the implication that the Commission will order the transfer regardless of the railroad's interest in the idea. It is hardly conclusive. Washington also points out that the House Report restates the general objectives underlying § 1247(d) of developing additional trails, preserving rights-of-way for future reactivation (rail banking), protecting rail transportation corridors, and encouraging energy efficient transportation use, *id.*, at 1983 U.S.Code Cong. & Ad.News at 119. The state contends that mandatory application of § 1247(d) better

3. Contrary to the parties' assertions, little is gleaned from consideration of other parts of the Trails Act. The provision advanced by petitioner, 16 U.S.C. § 1248(b), merely calls upon agencies such as the Commission to "cooperate" with the Secretaries of Agriculture and the Interior "to assure, to the extent practicable" that properties "having values suitable for trail purposes may be made available for such use." Respondent, for its part, argues that other sections of the Trails Act demonstrate congressional solicitude for the property rights of railroads. *See* 16 U.S.C. §§ 1246(e), (g) and 1249. None of these provisions bears directly on the issue before the court either.

4. The relevant portion of the House Report states:

"Section 208 amends section 8 of the Act to encourage the development of additional trails in conjunction with the provisions of the Railroad Revitalization and Regulatory Reform Act of 1976. This reflects the concern that previous congressional efforts have not been successful in establishing a process through which railroad rights-of-way which are not immediately necessary for active service can be utilized for trail purposes. This appears to be true despite the fact that these efforts have also been to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use.

The key finding of this amendment is that interim use of a railroad right-of-way for trail use, when the route itself remains intact for future railroad purposes, shall not constitute an abandonment of such rights-of-way for railroad purposes. This finding alone should eliminate many of the problems with this program. The concept of attempting to establish trails only after the formal abandonment of a railroad right-of-way is self-defeating; once a right-of-way is abandoned for railroad purposes there may be nothing left for trail use. This amendment would ensure that potential interim trail use will be considered prior to abandonment. If interim use of an established right-of-way consistent with the National Trails System Act is feasible, and if a State, political subdivision, or qualified private organization is prepared to assume full responsibility for the management of such right-of-way, for any legal liability, and for the payment of any and all taxes that may be levied or assessed against such right-of-way— that is, to save and hold the railroad harmless from all of these duties and responsibilities— then the route will not be ordered abandoned.

This provision will protect railroad interests by providing that the right-of-way can be maintained for future railroad use even though service is discontinued and tracks removed, and by protecting the railroad interests from any liability or responsibility in the interim period. This provision will assist recreation users by providing opportunities for trail use on an interim basis where such situation exists."
H.Rep. No. 98–28, 98th Cong., 1st Sess. 8–9, *reprinted in* 1983 U.S.Code Cong. & Ad.News 112, 119–20 (1983).

achieves these objectives. Even if the state's conclusion is valid, we are unable to find from the recitation of these objectives that Congress intended to make transfers mandatory.

In addition, Washington's favored construction is undermined by language elsewhere in the House Report. Rather than requiring the establishment of trails, the report speaks of "encourag[ing]" their development. *Id.*, 1983 U.S.Code Cong. & Ad.News at 119. More significantly, the report indicates that § 1247(d) was enacted primarily to prevent rights-of-way from reverting to their owners upon the cessation of railroad use. The House Report refers to this feature of § 1247(d) as the amendment's "key finding." *Id.* This objective is achieved via language in the second sentence of § 1247(d) which provides that interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." Plainly, the achievement of this objective—arguably the amendment's principal purpose—does not depend upon a mandatory construction of § 1247(d).

Having considered the relevant legislative history, we conclude it does little to dispel the statute's ambiguity. While the general purposes of the Trails Act may better be achieved under a mandatory interpretation, these general purposes are also advanced by the Commission's voluntary approach. Moreover, both equally achieve the primary objective of preventing reversions upon the cessation of railroad use. As for the other language in the House Report, it, too, leaves the matter unresolved.

### 3. Other Issues

We reject Washington's contention that the voluntary interpretation renders § 1247(d) superfluous. While making the section voluntary may not achieve as much in the way of trail use as would a mandatory construction, § 1247(d) serves to facilitate rail-to-trail conversion by blocking right-of-way reversions. In addition, by requiring an interim trail user to assume full financial and legal responsibility for the

right-of-way, § 1247(d) provides incentives for railroads to consider interim trail use where they might otherwise simply pursue abandonment. Previous enactments, including 49 U.S.C. § 10906, do not accomplish these ends.

Nor do we find merit in Washington's argument that the Commission's voluntary interpretation renders sentence three irrational. While we agree that the parties could on their own reach the prescribed same terms, *i.e.* the interim user must assume total responsibility for the right-of-way, automatically building such conditions into any agreement may make railroads more likely to enter into interim use negotiations.

Finally, with respect to the "takings" issue, if Congress had expressly provided for condemnation power in the statute, there would be little doubt that Congress intended to make transfers mandatory. Since there is no such provision, we can only speculate that Congress (1) did not intend to make transfers mandatory, (2) intended to make transfers mandatory but did not view interim use as a "taking", or (3) simply never considered the matter. We are therefore unable to find that Congress has expressed itself clearly on the issue before us.

### B. Permissible Interpretation?

Faced with ambiguous statutory language that is not cleared up in the legislative history or otherwise, we move to consider whether the Commission's interpretation is "permissible." We conclude that it is. The Commission's voluntary interpretation is consistent with the plain language of the statute. It is also consistent with the House Report. It achieves the primary objective of the amendment, *i.e.* precluding reversions, and it advances general objectives of the Trails Act. Although a mandatory interpretation might more fully promote these objectives, the agency's choice of implementation strategies is not for us to dictate. As we have already discussed, the Commission's construction does not render § 1247(d) redundant or irrational. Lastly, we cannot say that it was unreasonable for the Commission to adopt a construction of the statute

882

in an effort to steer clear of potentially difficult constitutional problems related to "takings" and the payment of "just compensation."

## CONCLUSION

Congress did not specify when it enacted the 1983 amendments to the Trails Act whether the Commission would have the authority to compel interim trail use in lieu of abandonment. The Commission's view that it does not have this authority is a permissible construction of § 1247(d). What Washington asks us to do is make a policy choice. Our power of review does not permit us to indulge such requests, As the Supreme Court clearly explained in *Chevron:*

> When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail.

467 U.S. at 866, 104 S.Ct. at 2793. Accordingly, the petition for review is DENIED.