Maurice and Dolores **GLOSEMEYER**, et al., Appellants,

v.

**MISSOURI–KANSAS–TEXAS RAILROAD; Missouri Department of Natural Resources, an agency of the State of MO; Frederick A. Brunner, Director Missouri Department of Natural Resources, Appellees.**

**Conservation Federation of MO; National Wildlife Federation; the Rails to Trails Conservancy; the Lewis and Clark Nature Trail Foundation; the Sierra Club; the Paralyzed Veterans of America; BICYCLE USA; the Lewis and Clark Heritage Foundation; the American Hiking Society; the Katy MO River Trail Association; the American Rivers Conservation Council; United States, Intervenors Below.**

No. 88–1863.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1988.

Decided July 5, 1989.

---

Michael M. Berger, Los Angeles, Cal., for appellants.

Louise F. Milkman and Charles H. Montange, Washington, D.C., for appellees.

Before McMILLIAN and BEAM, Circuit Judges, and WHIPPLE,* District Judge.

McMILLIAN, Circuit Judge.

Plaintiffs appeal from a final order en-

---

* The Honorable Dean Whipple, United States Dis-  trict Judge for the Western District of Missouri,

tered in the District Court[1] for the Eastern District of Missouri rejecting their constitutional challenge to § 8(d) of the National Trails System Act of 1968 (Trails Act), as amended, 16 U.S.C. § 1247(d) (hereinafter § 1247(d)), and granting summary judgment in favor of defendants. *Glosemeyer v. Missouri–Kansas–Texas R.R.*, 685 F.Supp. 1108 (E.D.Mo.1988) (*Glosemeyer*). Plaintiffs are 144 individuals who own property adjacent to a railroad line in eastern Missouri that is no longer in use.[2] Their properties are subject to easements or rights-of-way for railroad use. The Missouri–Kansas–Texas Railroad Co. (MKT), the Missouri Department of Natural Resources (DNR), and the director of the DNR, Frederick A. Brunner, were the original defendants. The United States and eleven environmental and recreational interest groups[3] were later granted leave to intervene as defendants.

For reversal plaintiffs argue the district court erred in granting summary judgment in favor of defendants because § 1247(d), (1) constitutes a taking of rights-of-way for trail use without just compensation in violation of the takings clause of the fifth amendment, (2) is not a valid exercise of power under the commerce clause, and (3) impairs private contractual rights in violation of the contracts clause and the due process clause of the fifth amendment. For the reasons discussed below, we affirm the order of the district court.

STATUTORY BACKGROUND

The following is a summary for purposes of analysis only. For a comprehensive legislative history of the Trails Act and the 1983 amendments, see the discussions in *Glosemeyer*, 685 F.Supp. at 1113–17, and *National Wildlife Federation v. ICC*, 271

U.S.App.D.C. 1, 850 F.2d 694, 697–99 (1988) (*NWF*). Section 1247(d) is part of the Trails Act. Congress enacted the Trails Act in 1968 in order to establish a nationwide system of nature trails. As originally enacted, the Trails Act made no provision for the conversion of railroad rights-of-way to trail use. *NWF*, 850 F.2d at 697. By the early 1970s, however,

[c]oncerned about the disintegration of our national rail system due, in part, to abandonment of rail corridors, [C]ongress called for a study on establishing a "rail bank" consisting of selected abandoned railroad rights-of-way. Railroad Revitalization and Regulatory Reform Act of 1976 [ (4–R Act) ], § 809, Pub.L. No. 94–210, Title VIII, 90 Stat. 144 (codified as amended at 49 U.S.C. § 10906 (1980)). One significant impediment to the preservation of rail corridors has been that much railroad right-of-way is held by easement only and, under the laws of some states, once rail service is discontinued such easements automatically expire and the rights-of-way revert to adjacent property owners.

To address this problem, [C]ongress enacted 16 U.S.C. § 1247(d) as part of the 1983 Trails Act Amendments in order (1) to preserve for possible future railroad use rights-of-way that are not currently in service and (2) to allow interim use of the rail corridors as recreational trails.

*Preseault v. ICC*, 853 F.2d 145, 147 (2d Cir.1988) (*Preseault*), *cert. granted,* —— U.S. ——, 109 S.Ct. 1929, 104 L.Ed.2d 401 (1989).

As explained in *Glosemeyer*, 685 F.Supp. at 1116–17 (citations omitted), § 1247(d)

grant[s] interested parties the opportunity to use, for recreational purposes, and

---

sitting by designation.

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

2. The district court granted the American Farm Bureau Federation and the Missouri Farm Bureau Federation leave to file briefs in support of plaintiffs as amici curiae. These organizations filed a joint amicus brief in support of plaintiffs on appeal.

3. The interest group intervenors are the Conservation Federation of Missouri, the National Wildlife Federation, the Rails to Trails Conservancy, the Lewis and Clark Nature Trial Foundation, the Sierra Club, the Paralyzed Veterans of America, BICYCLE USA, the Lewis and Clark Heritage Foundation, the American Hiking Society, the KATY Missouri River Trail Association, and the American Rivers Conservation Council.

to preserve, for future rail service, railroad rights-of-way which have been approved for abandonment. Section 1247(d) provides that if interim trail use "is subject to restoration or reconstruction for railroad purposes" then such use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." It also provides that if a qualified public or private entity is prepared to assume full responsibility for the management of the right-of-way and for any liability arising out of its transfer or use, the [Interstate Commerce Commission (ICC)] "shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with [the Trails Act], and shall not permit abandonment or discontinuance inconsistent or disruptive of such use."

. . . .

Under its final rules,[4] when the ICC finds that a railroad right-of-way is appropriate for abandonment under 49 U.S.C. § 10903 and when a qualified public or private entity offers to maintain the right-of-way for interim trail use, the ICC issues a [Certificate of Interim Trail Use (CITU)]. The CITU permits the railroad to discontinue rail service, cancel tariffs and salvage track and other equipment. It further provides the railroad and the prospective interim trail user 180 days to negotiate an interim trail use agreement. If no agreement is reached, "then the CITU will convert into an effective certificate of abandonment, permitting the railroad to abandon the line immediately." If, however, an agreement is reached, the ICC will permit interim trail use and hold in abeyance its authorization to abandon the right-of-way. Should the trail user thereafter

seek to terminate its use of the right-of-way, it must file a "petition to reopen the abandonment proceeding" so that the ICC may "issue a certificate of abandonment to the railroad and to the trail user."

... Accordingly, "[t]he key finding of [§ 1247(d)] is that interim use of a railroad right-of-way for trail use, when the route itself remains intact for future railroad purposes, shall not constitute an abandonment of such rights-of-way for railroad purposes."

*See also NWF,* 850 F.2d at 699–02 (interim trail use requires voluntary agreement between railroad and trail user); *Washington State Department of Game v. ICC,* 829 F.2d 877, 879–81 (9th Cir.1987) (same).

## PROCEDURAL BACKGROUND

At issue in the present case is approximately 200 miles of railroad right-of-way between Machens and Sedalia, Missouri; much of the railroad line follows the north bank of the Missouri River. MKT no longer provides rail service over the railroad line.

In September 1986 MKT filed an application with the ICC pursuant to 49 U.S.C. § 10903 to abandon the contested section of right-of-way. Several parties protested or commented on the MKT application to abandon, including the DNR. In October 1986 the DNR invoked § 1247(d) and requested the ICC to issue a CITU to preserve the right-of-way for railbanking, citing the geological, biological, historical, archeological, and cultural values of the right-of-way. MKT was interested in working out an interim use agreement with the state and the other interest groups. Adjacent landowners, however, opposed the conversion of the right-of-way to trail use on the grounds that, by operation of state law, once the right-of-way is no longer used

---

**4.** *See Rail Abandonments—Use of Rights-of-Way as Trails,* 2 I.C.C.2d 591 (1986), *and Rail Abandonments—Supplemental Trails Act Procedures,* 4 I.C.C.2d 152 (1987) (codified at 49 C.F.R. § 1152.29). In response to other litigation involving railbanking, *see National Wildlife Fed'n v. ICC,* 271 U.S.App.D.C. 1, 850 F.2d 694 (1988), the ICC recently issued a supplemental policy statement expressing its conclusion that the rail-

banking provision does not violate the just compensation clause, either because railbanking does not constitute a taking or because, if it does constitute a taking, monetary relief is available under the Tucker Act in the Claims Court. *See* 54 Fed.Reg. 8011, 8013 (Feb. 24, 1989). A petition for review has been filed. *Beres v. ICC,* No. 89–1178 (D.C.Cir. Mar. 14, 1989).

for rail purposes, it automatically dissolves. They also expressed concerns about security and crime.

In March 1987 the ICC concluded that the economic burden on MKT of continued operation outweighed the inconvenience to shippers and others from discontinuance of service and authorized issuance of a CITU pursuant to § 1247(d) in lieu of a certificate of abandonment. *Missouri–Kansas–Texas R.R.—Abandonment—St. Charles, Warren, Montgomery, Calloway, Boone, Howard, Cooper & Pettis County, Mo.,* ICC No. AB–102 (Sub–No. 13) (served Mar. 16, 1987). On April 22, 1987, the ICC issued the CITU. *Id.* (served Apr. 27, 1987).

In the meantime, in December 1986, after the ICC final rules had been issued but before the ICC issued the CITU, plaintiffs, owners of property adjacent to the right-of-way, filed an action to quiet title in state court against MKT, the DNR, and Brunner, the director of the DNR. The action was later removed to federal district court. Plaintiffs alleged that their predecessors-in-interest had granted a right-of-way over their property to the predecessors-in-interest of MKT "for the purpose of right-of-way for a Railroad, and for no other purpose." Plaintiffs argued that when MKT ceased to use the right-of-way for the purpose of a railroad, MKT, by operation of state law, lost its interest in the right-of-way and had no interest in the right-of-way to transfer to DNR. Plaintiffs alleged that but for conversion of the right-of-way from "rails to trails" use under § 1247(d), their reversionary interests in the right-of-way would have vested in them under state law. Plaintiffs argued § 1247(d) violated the commerce clause, the contracts clause, the due process clause, the takings clause, and various state constitutional and statutory provisions. Plaintiffs sought declaratory and injunctive relief.

As noted earlier, the United States and eleven environmental and recreational interest groups intervened.

In a well-reasoned opinion, the district court held that it had subject matter jurisdiction over plaintiffs' constitutional challenge to § 1247(d), *Glosemeyer,* 685 F.Supp. at 1112, but not plaintiffs' claims against the regulations and the ICC decision, *id.,* and rejected plaintiffs' claims on the merits, holding that § 1247(d) did not violate the commerce clause, the contracts clause, the fifth amendment due process clause, or the takings clause, and that state law in conflict with the federal statutory scheme was pre-empted. *Id.* at 1118–22. The district court granted summary judgment in favor of defendants and against plaintiffs and declared § 1247(d) is constitutional. This appeal followed.

JURISDICTION

■ As a preliminary matter, we hold that we have appellate jurisdiction under 28 U.S.C. § 1291 and do not reach the question whether we also have jurisdiction under 28 U.S.C. § 2342. *Cf. Preseault,* 853 F.2d at 149 (finding appellate jurisdiction pursuant to 28 U.S.C. § 2342 to review constitutional challenge to ICC order under § 1247(d); describing as nonsensical requirement of bifurcated challenge). Plaintiffs' action to quiet title in state court was removed to federal district court in December 1986; the ICC decision granting the CITU was not served until March 6, 1987. Because no administrative action had been taken at the time plaintiffs' complaint had been removed and filed in federal district court, the district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, to decide plaintiffs' facial challenge to the constitutionality of § 1247(d). *See Preseault,* 853 F.2d at 149, *citing Public Utilities Comm'n v. United States,* 355 U.S. 534, 540, 78 S.Ct. 446, 450, 2 L.Ed.2d 470 (1958).

■ We also agree that the district court did not have subject matter jurisdiction over plaintiffs' challenge to the ICC's decision to grant the CITU and to the ICC's final rules implementing § 1247(d). Under 28 U.S.C. § 2342, the federal circuit courts of appeal, and not the federal district courts, have exclusive jurisdiction to "determine the validity of . . . all rules, regulations, or final orders of the [ICC] made reviewable by [28 U.S.C. § 2321]." *See NWF,* 850 F.2d at 699 (petitions for review of final ICC rules); *Washington State De-*

*partment of Game v. ICC*, 829 F.2d at 878 (petitions for review of ICC decision to deny CITU and final ICC rules).

## CONTRACTS CLAUSE

■ We first address plaintiffs' contracts clause and related substantive due process arguments. Plaintiffs argue that § 1247(d) violates the contracts clause, U.S. Const. art. I, § 10. Brief for Appellants at 48 n. 31. Plaintiffs characterize the grants of right-of-way by their predecessors-in-interest to MKT's predecessors-in-interest as contracts and argue that § 1247(d) impairs their rights under these contracts by purporting to transfer their reversionary interests in the right-of-way to a third-party, that is, the designated interim trail user or, possibly, the public. As correctly noted by the district court, this argument must fail because the contracts clause[5] applies only to state, not federal, laws. *Glosemeyer*, 685 F.Supp. at 1118; *see also NWF*, 850 F.2d at 702 n. 12. Section 1247(d) is federal legislation.

"Any claim that federal legislation unlawfully impairs existing contracts falls under the due process clause of the fifth amendment." *NWF*, 850 F.2d at 702 n. 12. "The party asserting a Fifth Amendment due process violation must overcome a presumption of constitutionality and 'establish that the legislature acted in an arbitrary and irrational way.'" *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe R.R.*, 470 U.S. 451, 472, 105 S.Ct. 1441, 1455, 84 L.Ed.2d 432 (1985), *citing Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984). Plaintiffs argue that § 1247(d) violates substantive due process because it is arbitrary, capricious and lacking in a rational basis. Brief for Appellants at 48 n. 31.

■ Even if we assume for purposes of analysis, as did the district court, that the right-of-way agreements were contracts and that § 1247(d) substantially impaired plaintiffs' contractual rights, this argument

must fail. The substantive due process argument is related to plaintiffs' commerce clause argument. As discussed further below, we reject both arguments for the same reasons. We agree with the district court that "Congress acted rationally in enacting § 1247(d) by electing to postpone railroad abandonments and to encourage interim trail use so as to further its railbanking purpose." *Glosemeyer*, 685 F.Supp. at 1119.

## COMMERCE CLAUSE

The district court concluded that "Congress acted rationally in enacting § 1247(d) by electing to postpone railroad abandonments and to encourage interim trail use so as to further its railbanking purpose" and thus held § 1247(d) did not violate the commerce clause. *Glosemeyer*, 685 F.Supp. at 1117–18. As a threshold matter, plaintiffs argue the district court erred in applying a rational basis test. Plaintiffs argue the applicable standard of review is strict scrutiny, *citing Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (*Nollan*). *Nollan* involved land use regulation. We think the district court correctly characterized § 1247(d) as part of the comprehensive federal scheme regulating railroads and thus subject to commerce clause analysis and the rational basis test. *See Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (*Hodel*).

On the merits, plaintiffs argue that § 1247(d) lacks a rational basis because Congress's express legislative purpose, railbanking, is a sham. Plaintiffs argue that railbanking is merely a subterfuge for Congress's "real" purpose, that is, the conversion, without just compensation, of their reversionary interests in the right-of-way to recreational trail use. As is apparent from the reference to just compensation, this argument is related to plaintiffs' takings clause argument discussed below. Plaintiffs argue that it is virtually impossi-

---

**5.** The contracts clause provides in part that "[n]o State shall ... pass any ... law impairing the Obligation of Contracts."

ble to believe that railroad lines which have been proposed for abandonment and converted to interim trail use will ever be restored to rail service in the future. Plaintiffs argue that, because in most cases the track will have been salvaged, resumption of rail service would require the installation of a new roadbed and new track and the repair or reconstruction of bridges and would thus be prohibitively expensive. Plaintiffs argue that in the present case resumption of rail service is particularly unlikely in light of MKT's acquisition of trackage rights along a route parallel to this right-of-way.

Plaintiffs also argue that, assuming there is a rational basis for railbanking, the means chosen by Congress are not reasonably related to this purpose. For example, plaintiffs argue that certification for interim trail use affects only 5% of all railroad rights-of-way proposed for abandonment and thus is a remarkably underinclusive way to preserve rights-of-way for future rail service. Plaintiffs also argue that, although railbanking is ostensibly of vital importance to the national welfare, certification for interim trail use is not mandatory and instead depends upon the voluntary cooperation of both the abandoning railroad and the prospective interim trail user.

Under commerce clause analysis, the scope of judicial review is "relatively narrow." *Hodel*, 452 U.S. at 276, 101 S.Ct. at 2360.

In determining whether an exercise of congressional power is valid under the commerce clause a court may consider only (1) whether there is any rational basis for a congressional finding that the regulated activity affects interstate commerce; and (2) whether "the means chosen by [Congress are] reasonably adapted to the end permitted by the Constitution."

*Preseault*, 853 F.2d at 149, *citing Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 262, 85 S.Ct. 348, 360, 13 L.Ed.2d 258 (1964); *see also Hodel*, 452 U.S. at 276, 101 S.Ct. at 2360.

We hold the district court's analysis on the merits is correct. First, we agree that railbanking is not a mere sham for recreation or conservation uses. "[Section 1247(d)] serves two purposes: (1) preserving rail corridors for future railroad use and (2) permitting public recreational use of trails. Both purposes are legitimate congressional goals under the commerce clause." *Preseault*, 853 F.2d at 150. Because plaintiffs do not contend that § 1247(d) is a regulation of an activity which does not affect interstate commerce or that Congress cannot regulate railroad abandonments,[6] the only issue is whether § 1247(d) was reasonably adapted to these two purposes. We agree with the Second Circuit that interim trail use is "a remarkably efficient and sensible way to achieve both goals." *Id.*

Section 1247(d) enables railroads that wish to discontinue service to help preserve rights-of-way for future rail use, when they might otherwise seek to abandon a line; it protects the railroad from liability in the interim; and it provides for maintenance of the right-of-way by the trail user during the interim.

*Id.* It may well be true that interim trail use is not a very effective way to accomplish these goals. However, such an argument should be addressed to Congress, not the courts. "[T]he effectiveness of existing laws in dealing with a problem identified by Congress is ordinarily a matter committed to legislative judgment." *Hodel*, 452 U.S. at 283, 101 S.Ct. at 2364.

TAKINGS CLAUSE

This is plaintiffs' principal argument. The district court held that § 1247(d) did not constitute an unconstitutional taking of

---

**6.** "Congress's authority to regulate the railroads is well recognized, as is its authority to regulate railroad abandonments." *Preseault v. ICC*, 853 F.2d 145, 150 (2d Cir.1988) (citations omitted), *cert. granted*, —— U.S. ——, 109 S.Ct. 1929, 104 L.Ed.2d 401 (1989). And, as noted by the district court, "Congress vested in the ICC 'exclu-

sive' and 'plenary' authority over railroad abandonments." *Glosemeyer v. Missouri–Kan.–Tex. R.R.*, 685 F.Supp. 1108, 1113 (E.D.Mo.1988), *citing Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321, 101 S.Ct. 1124, 1132, 67 L.Ed.2d 258 (1981).

plaintiffs' property without just compensation because plaintiffs had an adequate legal remedy under the Tucker Act, 28 U.S. C. § 1491.[7]  *Glosemeyer*, 685 F.Supp. at 1119.  Plaintiffs argue that § 1247(d) effects a temporary regulatory taking of their reversionary interests in the right-of-way by postponing the vesting of these interests under state law.  Plaintiffs argue that this constitutes a taking without just compensation in violation of the takings clause.  Plaintiffs further argue that they have no adequate remedy at law and are therefore entitled to equitable relief, that is, enjoyment of their property free of the right-of-way or easement for railroad use.  They argue the Tucker Act remedy is not available because § 1247(d) does not include any provision for compensation and because Congress did not appropriate any funds to acquire lands for the national trails system.

MKT, the state defendants, and the environmental and recreational interest group defendants argue jointly that § 1247(d) does not effect a taking at all.  These defendants note that, under § 1247(d), when the ICC authorizes interim trail use instead of abandonment, the right-of-way has not been abandoned and remains subject to the exclusive and continuing jurisdiction of the ICC.  They argue that state property law is irrelevant unless and until the ICC declares the right-of-way to be abandoned, thereby ending its jurisdiction over the right-of-way.  The United States argues that, even if § 1247(d) does effect a taking, the district court correctly held that equitable relief was not available because plaintiffs could seek just compensation under the Tucker Act in the Claims Court. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (*Monsanto*) (alleged regulatory taking of trade secrets per pesticide statute; no equitable relief because compensation available per Tucker Act).

In the present case the district court did not decide whether the conversion of the right-of-way from rail use to interim trail use under § 1247(d) constituted a taking.  Instead, the district court assumed for purposes of analysis that conversion of the right-of-way from rail use to interim trail use would effect at least a temporary taking of plaintiffs' reversionary interests in the right-of-way.  The district court concluded, however, that § 1247(d) did not constitute a violation of the takings clause because plaintiffs had an available legal remedy—they could sue for damages under the Tucker Act in claims court. *Glosemeyer*, 685 F.Supp. at 1119–20.  For the reasons discussed below, we hold the district court's analysis of the takings issue was correct.

We note that the takings issue has divided the circuit courts of appeal.  The District of Columbia Circuit has strongly suggested that "the postponement of a reversionary interest that would otherwise vest under state law constitutes a taking of private property [for public use] for which just compensation must be made." *NWF*, 850 F.2d at 704 (reviewing ICC final rules which provided that conversion of rights-of-way from railroad use to interim trail use would not result in a taking of any reversionary interests in rights-of-way; rules remanded to ICC for further consideration); *accord Lawson v. State*, 107 Wash.2d 444, 730 P.2d 1308, 1315–16 (1986);  *cf. Regional Rail Reorganization Act Cases*, 419 U.S. 102, 134, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974) (*Regional Rail*) ("erosion taking" under the Regional Rail Reorganization Act of 1973).  The Second Circuit, however, has squarely held that § 1247(d) does not effect a taking because "[t]he ICC has plenary and exclusive authority to determine whether it is appropriate under all the circumstances to allow a railroad carrier to abandon a route, and if the ICC determines that abandonment is not appropriate, no reversionary interest [in the right-of-way]

---

**7.**  The Tucker Act, 28 U.S.C. § 1491(a)(1), provides in part that

    [t]he United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either

upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

can or would vest [under state law]." *Preseault v. ICC*, 853 F.2d at 151; *accord State ex rel. Washington Wildlife Preservation, Inc. v. State*, 329 N.W.2d 543 (Minn.), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983). The Supreme Court recently granted a petition for writ o certiorari in the *Preseault* case. 109 S.Ct. 1929.

Like the district court, we assume for purposes of analysis that the conversion of the right-of-way from railroad use to interim trail use under § 1247(d) constituted a taking of plaintiffs' reversionary interests in the right-of-way.[8] We also assume for purposes of analysis that plaintiffs do possess reversionary interests in the right-of-way which would vest by operation of state law when the right-of-way is no longer used for rail service. *But cf. NWF*, 850 F.2d at 703–04 (state laws operate subject to plenary authority of ICC to regulate railroad abandonments and cannot transfer, extinguish or cause reverter of right-of-way prior to ICC-approved abandonment).

In our view, whether § 1247(d) effects a taking of plaintiffs' property interests does not answer plaintiffs' constitutional challenge; rather, what is dispositive is whether plaintiffs can obtain compensation, which depends, in turn, upon whether plaintiffs can sue under the Tucker Act, 28 U.S.C. § 1491. This is because the takings clause[9] of the fifth amendment "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 314, 107 S.Ct. 2378, 2385, 96 L.Ed.2d 250 (1987) (citations omitted). [I]t is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking. Thus, government action that works a taking of property rights necessarily im-

plicates the "constitutional obligation to pay just compensation."

*Id.* at 315, 107 S.Ct. at 2384 (emphasis in original), *citing Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). "The Fifth Amendment does not require that compensation precede the taking." *Monsanto*, 467 U.S. at 1016, 104 S.Ct. at 28 (citation omitted). "All that it requires is that a ' "reasonable, certain and adequate provision for obtaining compensation" ' exist at the time of the taking." *Glosemeyer*, 685 F.Supp. at 1119, *citing Regional Rail*, 419 U.S. at 124–25, 95 S.Ct. at 349. "Generally, an individual claiming that the United States has taken his [or her] property can seek just compensation under the Tucker Act, 28 U.S.C. § 1491." *Monsanto*, 467 U.S. at 1016, 104 S.Ct. at 2879 (footnote omitted).

Plaintiffs, of course, argue that they cannot sue under the Tucker Act because there is no express provision in § 1247(d) authorizing a taking or appropriating any funds as compensation. Plaintiffs further argue that because the Tucker Act is not available to them, they have no adequate legal remedy and are thus entitled to equitable relief. We disagree.

In determining whether a Tucker Act remedy is available for claims arising out of a taking pursuant to a federal statute, the proper inquiry is not whether the statute "expresses an affirmative showing of congressional intent to permit recourse to a Tucker Act remedy," but "whether Congress has in the [statute] *withdrawn* the Tucker Act grant of jurisdiction to the Court of Claims to hear a suit involving the [statute] 'founded … upon the Constitution.' "

*Id.* at 1017, 104 S.Ct. at 2880, *citing Regional Rail*, 419 U.S. at 126, 95 S.Ct. at 349 (emphasis in original). As noted by the district court, "[a]ltogether absent in § 1247(d) or its legislative history is a discussion of the interaction between

---

**8.** "The inquiry into whether a taking has occurred is essentially an 'ad hoc, factual inquiry.' " *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984) (citation omitted).

**9.** The takings clause provides in part that "private property [shall not] be taken for public use, without just compensation."

§ 1247(d) and the Tucker Act." *Glosemeyer*, 685 F.Supp. at 1120.

Congress did not address the liability of the United States to pay just compensation if a taking be found to have occurred. Congress either did not believe that the postponement of a railroad's abandonment of a right-of-way constituted a taking or assumed that the general grant of jurisdiction under the Tucker Act would provide a necessary remedy for any taking that might be found to have occurred. In either event, Congress' failure to address the issue cannot be construed to reflect an unambiguous intention to withdraw the Tucker Act remedy.

*Id.* at 1121. The statute and its legislative history are simply silent.

In the face of this legislative silence, the district court correctly refused to hold that the Tucker Act remedy was not available to plaintiffs. The most that can be said is that § 1247(d) is ambiguous on the question of the availability of the Tucker Act remedy. Because "the Tucker Act grants what is now the Claims Court 'jurisdiction to render judgment upon any claim against the United States founded ... upon the Constitution,'" *id.* (citations omitted), holding that plaintiffs could not sue under the Tucker Act with respect to takings under § 1247(d) would amount to holding that § 1247(d) withdrew jurisdiction from the Claims Court and thus partially repealed the Tucker Act. Not only are "repeals by implication ... disfavored," *Regional Rail*, 419 U.S. at 133, 95 S.Ct. at 353, it is also entirely possible for § 1247(d) and the Tucker Act to co-exist. "[W]here two statutes are 'capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *Monsanto*, 467 U.S. at 1018, 104 S.Ct. at 2881, *citing Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974) (intermediate citation omitted). In the absence of a clearly expressed Congressional intention to the contrary, the district court correctly refused to construe § 1247(d) to withdraw the Tucker Act rem-edy. We hold that § 1247(d) does not violate the takings clause.

 Finally, we hold that the district court correctly denied plaintiffs' request for equitable relief. "Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Monsanto*, 467 U.S. at 1016, 104 S.Ct. at 2880 (footnote omitted).

Accordingly, we affirm the order of the district court.